PER CURIAM.
Petitioner N-A-M seeks review of a Board of Immigration Appeals’ (“BIA”) decision to remove her to her native El Salvador.[1] Although the Immigration Judge determined that N-A-M had a “viable persecution claim,” I.J. Dec. at 8, the Immigration Judge denied, and the BIA affirmed, her petition for withholding of removal because she had been convicted of felony menacing — a “particularly serious crime,” pursuant to the Refugee Act of 1980, Pub.L. 96-202, 94 Stat. 102, see 8 U.S.C. § 1231.
On appeal, N-A-M asserts three legal errors in the BIA’s decision: First, she argues that felony menacing does not constitute a “particularly serious offense” as contemplated by § 1231; second, she asserts that the BIA applied the wrong legal framework in adjudicating her case; and third, she contends that she was denied due process of law. Finding no error of law, we affirm.
BACKGROUND
Appellant, N-A-M, is a thirty-eight year old preoperative transsexual (male-to-female) from El Salvador. In El Salvador, N-A-M was subjected to multiple instances of persecution due to her transgendered status, and fled to the United States in 2004, entering without inspection.
In June 2005, N-A-M was convicted of felony menacing, in violation of Colo.Rev. Stat. § 18-3-206(l)(a), (b) and reckless endangerment, in violation of Colo.Rev.Stat. § 18-3-208. Upon conviction, N-A-M was sentenced to four years deferred judgment and four years of probation.
In November 2006, N-A-M was served with a Notice to Appear before an immigration judge to show why she should not be removed from the United States. She filed an application for asylum pursuant to 8 U.S.C. § 1158, an application for withholding of removal, pursuant to 8 U.S.C. § 1231(b)(3), and an application for withholding of removal under the regulations implementing the Convention Against Torture, at 8 C.F.R § 1208.16(c), 18. Of these, only N-AM’s withholding claim is before us.
Under 8 U.S.C. § 1231(b)(3)(A),
the Attorney General may not remove an alien to a country if the Attorney General decides that the alien’s life or freedom would be threatened in that country because of the alien’s race, religion, nationality, membership in a particular social group, or political opinion.
However, § 1231(b)(3)(B)(ii) provides an exception to withholding of removal if:
(B) Exception.
Subparagraph (A) does not apply to an alien deportable under section *1055 1227(a)(4)(D) of this title or if the Attorney General decides that—
(ii) the alien, having been convicted by a final judgment of a particularly serious crime is a danger to the commimity of the United States; ...
For purposes of clause (ii), an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime. For purposes of clause (iv), an alien who is described in section § 1227(a)(4)(B) shall be considered to be an alien with respect to whom there are reasonable grounds for regarding as a danger to the security of the United States.
(emphasis added).
The Immigration Judge found that although N-A-M has suffered persecution as contemplated by § 1231(b)(3)(A), her conviction for felony menacing rendered her eligible for removal pursuant to § 1231 (b) (3) (b) (ii). The Immigration Judge stated that although N-A-M “has been persecuted in the past ... [She] has been convicted of a particularly serious crime and thereby constitutes a danger to the community---- And, therefore, even though the respondent has a viable persecution claim, [her] application is denied as a matter of law.” I. J. Dec. at 7-8.
In April 2007, N-A-M appealed the Immigration Judge’s decision to the BIA, contending that the Immigration Judge erred in his construction of § 1231, and violated her due process rights by considering evidence outside of the record of conviction. In a published decision, the Board affirmed the decision of the Immigration Judge. In re N-A-M, 24 I. & N. Dec. 336 (BIA 2007). Turning first to N-A-M’s particularly serious offense claim, the BIA concluded that “Congress did not intend to limit what offenses may be particularly serious crimes to those offenses classified as aggravated felonies.” Id. at 341. As to N-A-M’s danger to the community claim, the BIA observed that it “no longer engage[d] in a separate determination to address whether the alien is a danger to the community.” Id. at 341. And finally, in addressing N-A-M’s due process challenge, the BIA noted that it “may examine all reliable information and [is] not limited to reviewing the record of conviction and sentencing information.” Id. at 343.
The Board denied N-A-M’s petition for rehearing en banc on March 11, 2008. These petitions followed.
DISCUSSION
Under 8 U.S.C. § 1252(a)(2), we have jurisdiction to review constitutional challenges and questions of law raised in a petition for review from a BIA decision. Brue v. Gonzales, 464 F.3d 1227, 1231 (10th Cir.2006) (citing 8 U.S.C. § 1252(a)(2)(D)). We review N-A-M’s statutory challenge and her due process claim de novo.[2] Id. at 1232. Consistent *1056 with the rule in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the BIA is entitled to deference in interpreting ambiguous provisions of the INA under the specific facts of this case.
1. Non-aggravated felonies may constitute “particularly serious” crimes for purposes of 8 U.S.C. § 1231.
N-A-M challenges the BIA’s statutory-construction of what constitutes a “particularly serious crime” under § 1231. See Aplt’s Br. at 43. She urges us to accept our sister circuit’s limitation of “particularly serious” offenses to aggravated felonies.[3] See, e.g., Alaka v. Atty. Gen’l of the U.S., 456 F.3d 88, 104 (3d Cir.2006) (“The plain language and structure (ie., context) of the statute indicate that an offense must be an aggravated felony to be sufficiently ‘serious.’ ”) (emphasis in original). Because her conviction did not constitute an aggravated felony, she argues, the BIA erred in classifying her felony menacing conviction as a “particularly serious” offense.
The BIA has developed administrative standards for determining what constitutes a particularly serious crime. See Matter of Frentescu, 18 I. & N. Dec. 244, 247 (BIA 1982) (“In judging the seriousness of a crime, we look to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community.”). We agree that apart from the designation of certain aggravated felonies as “particularly serious” offenses, the statute contains no limiting language restricting the Attorney General’s discretion to label other crimes as “particularly serious.” And, “[t]he long history of case-by-case determination of ‘particularly serious’ crimes” counsels against N-A-M’s attempt to craft a bright-line rule. Delgado v. Holder, 563 F.3d 863, 868 n. 7, 869 (9th Cir.2009) (noting that nothing in the statutory framework indicates an intent “to eliminate the Attorney General’s pre-existing discretion to determine that, under the circumstances presented by an individual case, a crime was ‘particularly serious’ ”). Furthermore, Congress’s use of two different terms— “particularly serious” crime and “aggravated felony” — is additionally indicative of substantively distinct meanings. See, e.g., United States v. Villanueva-Sotelo, 515 F.3d 1234, 1249 (D.C.Cir.2008). Given these somewhat open-ended definitions, the BIA or the Attorney General is authorized to develop a reasonable construction § 1231 to which we defer under Chevron.
*1057 2. Section 1231 does not require a separate “danger to the community” assessment.
Section 1231 (b)(3)(b)(ii) empowers the Attorney General to deny withholding to alien petitioners upon a determination that the petitioner “having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States.” The BIA construes this provision as requiring only an inquiry into whether the alien has committed a particularly serious crime. “[Ojnce an alien is found to have committed a particularly serious crime, we no longer engage in a separate determination to address whether an alien is a danger to the community.” 24 I. & N. Dec. at 342. N-A-M challenges the BIA’s construction of § 1231, contending that the BIA’s omission of an inquiry into whether the facts and circumstances of her felony menacing conviction warranted a finding that she is a danger to the community constitutes a misapplication of the legal standard articulated § 1231.
Although N-A-M and the distinguished amici make strong arguments that the BIA is not accurately interpreting the statute and its treaty-based under-pinnings, we are constrained by our precedent to hold otherwise. In Al-Salehi v. INS, as conceded by Amicus Curiae United Nations High Commissioner for Refugees, we affirmed the BIA’s interpretation of § 1231, holding that no separate danger-to-the-community assessment is required under the statute. 47 F.3d 390, 393 (10th Cir.1995) (citing In re Carballe, 19 I. & N. Dec. 357, 360 (1986) (“The phrase ‘danger to the community’ is an aid to defining a ‘particularly serious crime,’ not a mandate that administrative agencies or the courts determine whether the alien will become a recidivist.”)). And, as the Second Circuit noted in Ahmetovic v. INS, this “interpretation conflating the two requirements has been accepted by every circuit that has considered the issue.” 62 F.3d 48, 53 (2d Cir.1995) (collecting cases); see Choeum v. INS, 129 F.3d 29, 42-43 (1st Cir.1997) (deferring to the BIA’s construction of § 1231); Yousefi v. INS, 260 F.3d 318, 327-28 (4th Cir.2001) (same); Martins v. INS, 972 F.2d 657, 661 (5th Cir.1992) (same); Hamama v. INS, 78 F.3d 233, 240 (6th Cir.1996) (same); Garcia v. INS, 7 F.3d 1320, 1323 (7th Cir.1993) (same). We abide by our rule in Al-Salehi and affirm the BIA’s construction of § 1231 here; indeed, we remind amici that a panel of this court cannot overturn the decision of a previous panel absent a change in the law. United States v. Edward J., 224 F.3d 1216, 1220 (10th Cir.2000).
3. N-A-M suffered no denial of due process.
Following our precedent that the BIA reasonably construed 8 U.S.C. § 1231, we turn to N-A-M’s due process challenge. Under our cases, “when facing removal, aliens are entitled only to procedural due process, which provides the opportunity to be heard at a meaningful time and in a meaningful manner.” Schroeck v. Gonzales, 429 F.3d 947, 952 (10th Cir.2005) (internal quotation marks omitted). N-AM asserts that the BIA’s reliance on a Statement in Support of Warrantless Arrest (“the Statement”) in its “particularly serious crime” analysis violated her due process rights. Although the events articulated in the Statement did result in her felony menacing conviction, the document itself, she contends, reflects hearsay allegations of sexual misconduct for which she received no criminal sanction.
The evidentiary rules are not so strictly applied in immigration hearings. See Bauge v. INS, 7 F.3d 1540, 1543 (10th Cir.1993). The test for admissibility of evidence in a deportation hearing is wheth *1058 er the evidence is probative and its use is fundamentally fair. Id. Under our precedent dictating the evidentiary rules for immigration proceedings, we find no fundamental unfairness in the BIA’s use of the Statement; N-A-M was free to contest the statement with her own evidence. Accordingly, we reject N-A-M’s contention that the BIA’s reliance on the statement denied her due process.
CONCLUSION
The BIA’s reasonable construction of § 1231 is entitled to our deference, and N-A-M suffered no deprivation of her due process rights. Accordingly, we AFFIRM the decision of the BIA.

. N-A-M is a preoperative Iransgender person and wishes to be addressed as a female. In re N-A-M, 24 I & N Dec. 336 (BIA 2007). The Immigration Judge refers to N-A-M as a female, stating that N-A-M "testified that she came from a family of four boys and three girls and at the age of 11 she discovered that she had what we might call a discrepancy in her gender.” I.J. Dec. at 2-3. Accordingly, this court refers to N-A-M as a female.

. Although Respondents do not argue that we are without jurisdiction to examine the “particularly serious” crime challenge, to the extent that there is any dispute, we refer to our decision in Brue, which observed that "[wjhile we cannot reweigh evidence to determine if the crime was indeed particularly serious, we can determine [under 8 U.S.C. § 1252(a)(2)] whether the BIA applied the correct legal standard in making its determi *1056 nation.... We review [these] issues raised in the petition de novo.” 464 F.3d at 1232 (internal quotation marks omitted).

. Section 101(a)(43) of the INA defines “aggravated felony” to include, inter alia, “a crime of violence (as defined in section 16 of title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year.” 8 U.S.C. § 1101(a)(43)(F) (footnote omitted). In the record before the BIA, N-A-M’s felony menacing conviction did not qualify as an "aggravated felony.” The parties have informed the court that N-A-M has been resentenced twice since the conviction. First, N-A-M was re-sentenced to a term of one year, with 365 days credit for time served. Then, N-A-M was resentenced again to a term of 364 days. This factual addition might alter the “particularly serious crime” analysis. We, however, are statutorily precluded from consideration of this development under 8 U.S.C. § 1252(b)(4)(A) ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based.”). We posit that even if we were to take the resentencing into account, we would reach the same conclusion.