**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 5, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JACQUELINE WANGUI MUMBUA
MAINGI,

Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

Respondent.

No. 10-9544

Board of Immigration Appeals

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **BRORBY**, and **TYMKOVICH**, Circuit Judges.

---

Jacqueline Wangui Mumbua Maingi, a native and citizen of Kenya,

petitions for review of the decision by the Board of Immigration Appeals (BIA)

affirming the denial by an immigration judge (IJ) of her claims for restriction on

removal under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

seq., and the United Nations Convention Against Torture (CAT). Exercising jurisdiction under 8 U.S.C. § 1252, we affirm.

## I.     BACKGROUND

Ms. Maingi was admitted to the United States under a visa to study nursing but remained after completing her course of study. When removal proceedings were commenced against her, she admitted removability but claimed eligibility for asylum, restriction on removal, and relief under the CAT. She stated that she was afraid to return to Kenya because of ethnic violence that had erupted after elections in December 2007. In that election, current president Mwai Kibaki, who, like Ms. Maingi, is a member of the Kikuyu tribe, defeated a challenge by Raila Odinga, a member of the Luo tribe. As a result, tribal violence erupted between the Kikuyus and the Luos. Ms. Maingi asserted that members of the Luo tribe attacked and tortured Kikuyus, forcing many Kikuyus, including Ms. Maingi's family, to flee the city of Nairobi. She said that her sister suffered a broken arm in a bus accident, and a letter from her family explained that her sister had been injured when the bus driver swerved to avoid rocks that had been placed by Luos on a road commonly traveled by Kikuyus. According to Ms. Maingi, Kikuyus are easily distinguishable from Luos by differences in language, names, and skin color, and her family would be at particular risk because of her parents' occupations—her father is a police officer who would be expected to be a part of President Kibaki's political party, and her mother is also

a government employee, working as a secretary for a government-run electric company. She asserted that her mother could not go to work and her younger siblings could not go to school because of the violence. Although she admitted that she had never been personally threatened by a member of the Luo tribe, she stated that she feared "persecution and death at the hands of the Luo" should she return to Kenya. Cert. Admin. R., Vol. 1 at 209.

In a written decision and order dated September 22, 2008, the IJ denied the application for asylum, restriction on removal, and protection under the CAT. Ms. Maingi appealed the decision to the BIA, which affirmed the IJ's decision in an order authored by a single member of the BIA dated July 2, 2010. Her petition in this court challenges the denial of restriction on removal under the INA and the CAT. She argues (1) that the BIA erred in affirming the IJ's adverse credibility determination; (2) that the BIA failed to consider her arguments and all the evidence in affirming the IJ's denial of relief; and (3) that she was denied due process (a) because the BIA considered a state department report even though it had not been presented to the IJ and the BIA had given her no opportunity to rebut the report, (b) because the IJ failed to consider the evidence properly and used boilerplate language in his decision, and (c) because the BIA failed to consider her request for remand to the IJ to allow her to seek adjustment of status.

## II. DISCUSSION

"An applicant seeking [restriction on] removal bears the burden of showing a clear probability of persecution attributable to race, religion, nationality, membership in a particular social group, or political opinion." *Sviridov v. Ashcroft*, 358 F.3d 722, 729 (10th Cir. 2004) (internal quotation marks omitted). "[A] finding of persecution requires the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and must entail more than just restrictions or threats to life or liberty." *Wiransane v. Ashcroft*, 366 F.3d 889, 893 (10th Cir. 2004) (internal quotation marks omitted). Although an applicant need not show that she has been singled out for persecution if she is a member of a group against which there has been a pattern or practice of persecution on one of the protected grounds, *see id.*, a general condition of strife, lawlessness, or violence between different ethnic groups does not in itself support a claim of persecution. *See Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998) ("generalized lawlessness and violence between diverse populations" is insufficient to support a finding of persecution); *Bradvica v. INS*, 128 F.3d 1009, 1013 (7th Cir. 1997) ("[G]eneralized conditions of strife do not support a claim for asylum because they do not show that [the alien] himself will be singled out for persecution on account of one of the enumerated grounds.").

"To receive the protections of the CAT, an alien must demonstrate that it is more likely than not that [she] will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official," if removed to the proposed country of removal. *Sidabutar v. Gonzales*, 503 F.3d 1116, 1125 (10th Cir. 2007) (internal quotation marks omitted); *see* 8 C.F.R. § 1208.16(c)(2). "A claim under the CAT differs from a claim for . . . withholding of removal under the INA because there is no requirement that the petitioners show that torture will occur on account of a statutorily protected ground." *Sidabutar*, 503 F.3d at 1125 (internal quotation marks omitted).

In addressing Ms. Maingi's arguments, the nature of our review is determined by the form of the BIA's decision. When, as in this case, "a single member of the BIA issues a brief order affirming an IJ's decision, this court reviews both the decision of the BIA and any parts of the IJ's decision relied on by the BIA in reaching its conclusion." *Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010) (internal quotation marks omitted). "We review the BIA's legal determinations de novo and its findings of fact for substantial evidence." *Id.* "[F]actual findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (internal quotation marks omitted).

We now turn to Ms. Maingi's arguments.

## A.    Adverse Credibility Determination

Ms. Maingi challenges the IJ's adverse credibility determination based on her use of a fraudulent social security card and her checking the box on her Form I-9 attesting that she was a United States citizen or national.  We need not address this challenge, however, because the BIA ruled that she had not satisfied her burden of persuasion even if her testimony was credible.  We therefore turn to Ms. Maingi's challenge to the BIA's assessment of the evidence.

## B.    BIA's Assessment of the Evidence

The BIA rejected Ms. Maingi's arguments on appeal because she had not persuaded it that she faced a likelihood of persecution as a member of the Kikuyu tribe if she were returned to Kenya.  The BIA noted that the Kikuyu are the dominant ethnicity in Kenya and that because the president of Kenya is a Kikuyu, their political party is in power.  Although it would not matter that the Kikuyu tribe controls the government if that government were unable or unwilling to control violence by the Luos, *see Wiransane*, 366 F.3d at 893, the BIA could reasonably infer that the situation was not so dire.  Ms. Maingi's evidence focused on the December 2007 election and the immediate aftermath.  But this evidence, which was considered and discussed in the IJ's decision, does not refute the evidence of subsequent ameliorating measures.  The Kenyan government took forceful action to respond to the ethnic conflicts that erupted after the election; the Luo prime minister and Kikuyu president signed a power-sharing deal to ease

-6-

tensions between the two tribes; and the government adopted measures to promote dialogue and peaceful resolution of ethnic conflicts. On the evidence in the record, the BIA could properly find that Ms. Maingi had not satisfied her burden of demonstrating that she would be subject to persecution should she return to Kenya. Likewise, it could properly find that she had not met her burden under the CAT of showing it to be "more likely than not" that she would be "subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Sidabutar*, 503 F.3d at 1125 (internal quotation marks omitted).

## C. Due Process

Ms. Maingi contends that the IJ and the BIA made several errors that deprived her of constitutional due process. *See Wei v. Mukasey*, 545 F.3d 1248, 1257 (10th Cir. 2008) ("The Fifth Amendment guarantee of due process applies to aliens facing removal."). Due process "requires that the decisionmaker actually consider the evidence and argument that a party presents." *de la Llana-Castellon v. INS*, 16 F.3d 1093, 1096 (10th Cir. 1994). We review Ms. Maingi's due-process claims de novo. *See N-A-M v. Holder*, 587 F.3d 1052, 1055 (10th Cir. 2009).

Ms. Maingi objects to the BIA's use of a 2010 state department report on Kenya that had not been presented to the IJ. She asserts that she did not have a meaningful opportunity to respond to the report. But the BIA used the report only to show that the current president of Kenya is a member of the Kikuyu tribe, that

the prime minister is a member of the Kuo tribe, and that the two had signed a power-sharing agreement. These facts were amply supported by the record before the IJ—indeed, Ms. Maingi testified at the hearing that the president is a Kikuyu and the prime minister is a Kuo. Even if we were to assume that the BIA erred in using the report, the error was inconsequential

Ms. Maingi further argues that the IJ deprived her of due process by misconstruing and failing to consider the evidence that she submitted. This argument, however, is simply a reiteration of her argument challenging the BIA's ruling. As we have already observed, the record shows that the IJ addressed Ms. Maingi's evidence, and the findings against Ms. Maingi were supported by substantial evidence. We therefore reject the argument. *See Hadjimehdigholi v. INS*, 49 F.3d 642, 649 n.5 (10th Cir. 1995) (there was no due process violation when BIA's decision was supported by substantial evidence and BIA properly considered the evidence presented).

Ms. Maingi also accuses the IJ of using boilerplate language in his decision. She contends that the IJ's conclusion used incorrectly gendered pronouns when it stated:

> [T]he Respondent has failed to [provide] specific facts establishing that *he* has actually been a victim of persecution, or has a well founded fear that *he* will be singled out for persecution on account of race, religion, nationality, membership in a particular social group or political opinion. Therefore *his* application for asylum will be denied. Inasmuch as the Respondent has failed to satisfy the lower burden of proof required for asylum, it necessarily follows that

*he/she* ha[s] failed to satisfy the clear probability standard of eligibility required for withholding of removal or consideration under Article III, United Nations Convention Against Torture.

Cert. Admin. R., Vol. 1 at 55 (emphasis added). Ms. Maingi is correct that the use of boilerplate language in a decision may "hinder[] meaningful judicial review." *de la Llana-Castellon*, 16 F.3d at 1098 (internal quotation marks omitted). But review is not hampered in this case. The challenged language is confined to a one-paragraph conclusion after a lengthy discussion of specifics. The decision recounts the procedural history of the case, provides a summary of Ms. Maingi's testimony and the documentary evidence produced, and conducts an individualized analysis of the merits of her claims.

Finally, Ms. Maingi argues that the BIA deprived her of due process by failing to notice her request for remand to the IJ to seek an adjustment of status based upon her marriage to a United States citizen. But that request was not properly presented to the BIA. There is no due-process requirement that the BIA, or any appellate tribunal, address an issue when that issue, as here, was omitted from the appellant's list of issues presented for review, not mentioned in the summary of argument in the brief, not referenced in any heading in the argument section of the brief, and brought up only in a two-sentence paragraph within the brief's conclusion. This court would certainly not feel bound to address such an issue. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e

routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

## III.  CONCLUSION

We AFFIRM the order of the BIA.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge