**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 19-1286, 19-3455

_____

MICHAEL ALEXANDER NELSON, a.k.a. Michael A. Nelson,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of
Decisions of the Board of Immigration Appeals
(Agency No. A044-843-940)
Immigration Judge: Kuyomars Golparvar

_____

Argued January 28, 2021

Before: JORDAN, MATEY, *Circuit Judges*,
and BOLTON,* *District Judge*.

(Opinion Filed: March 29, 2021)

Richard H. Frankel, Esq.
Katelyn M. Hufe, Esq.
Brian Loughnane     [ARGUED]
Emily Miles         [ARGUED]
Drexel University
Thomas R. Kline School of Law
3320 Market Street
Philadelphia, PA 19104
        *Counsel for Petitioner Michael A. Nelson*

_____

* The Honorable Susan Bolton, Senior United States District Judge for the District of Arizona, sitting by designation.

Anna Juarez    [ARGUED]
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
    *Counsel for Respondent Attorney General of the United States of America*

_____

OPINION[**]

_____

MATEY, *Circuit Judge*.[1]

Petitioner Michael A. Nelson is a felon facing deportation to Jamaica for a second time. His first deportation ended in violence at the hands of a gang. Five years later, after Nelson returned to the United States and in light of his earlier drug convictions, the Department of Homeland Security ("DHS") reinstated his 2011 removal order.

But Nelson is afraid that removal to Jamaica will subject him to more gang violence. So he seeks withholding of removal under 8 U.S.C. § 1231(b)(3), and relief under the Convention Against Torture ("CAT"), 8 C.F.R. §1208.16(c). An immigration judge ("IJ") denied his claims, and the Board of Immigration Appeals ("BIA") affirmed. Nelson timely petitioned for review and we will grant Nelson's petition in part, deny it in part, and remand to the BIA for further proceedings.

_____

[**] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] The Court extends its gratitude to the Drexel University Thomas R. Kline School of Law and its students for their extraordinary efforts in briefing and arguing this matter on behalf of Petitioner.

2

# I.    BACKGROUND

Removed to Jamaica in March 2011 for a drug conviction,[2] Nelson returned to his old neighborhood in Kingston, where some of his childhood friends had become members of a gang known as the Bad Boys. The Bad Boys told Nelson they intended to harm Nelson's family friend Carl, because Carl was gay. Nelson tipped off Carl and, as a result, the gang members shot Nelson. He survived and went into hiding for a few months until, in January 2012, he re-entered the United States illegally.

Back in the United States, Nelson earned two new drug convictions[3] before his conviction for illegal re-entry. As a result, DHS reinstated his 2011 removal order. Nelson sought withholding of removal under 8 U.S.C. § 1231(b)(3) and relief under the CAT, 8 C.F.R. §1208.16(c). Both requests hinged on his continuing fear of the Bad Boys.

The IJ denied Nelson's claims and ordered him removed. The IJ found that Nelson failed to prove torture awaited him in Jamaica, finding insufficient evidence that the Bad Boys were still interested in harming him. The IJ credited Nelson's testimony about his 2011 run-in with the gang, and his fear that they would target him if he returned. But the IJ was unpersuaded that the Bad Boys still held a grudge against Nelson some seven years later, despite letters from Nelson's Jamaican friends suggesting he remained in danger. The

---

[2] That removal is not at issue here. *See Nelson v. Att'y Gen.*, 685 F.3d 318, 320 (3d Cir. 2012) (conceding removability based on a 1999 drug conviction).

[3] One for attempted possession with intent to distribute five or more pounds of marijuana (N.J. Stat. Ann. §§ 2C:5-1, 35-5b(10)), and one for attempted possession with intent to distribute marijuana near a public facility (N.J. Stat. Ann. §§ 2C:5-1, 35-7.1). Nelson received a five-year sentence for these convictions. Both occurred in 2008 but were not part of his initial removal proceedings because they were pending appeal in New Jersey state court at the time.

IJ also found that the Jamaican government would not acquiesce to Nelson's torture. Finally, the IJ found Nelson's marijuana convictions were particularly serious crimes rendering him statutorily ineligible for withholding of removal under 8 U.S.C. § 1231(b)(3)(B)(ii).

The BIA affirmed that decision in a written opinion adopting most of the IJ's findings. The BIA agreed that Nelson "ha[d] not demonstrated that the people who harmed him are still looking for him and would target him" in part because Nelson offered no evidence "other than [his] testimony[.]" (App. at 7–8.)[4] The BIA concluded that Nelson's friends' letters merely "speculate[d]" with "opinions" as to potential future harm. (App. at 7–8.) The BIA also affirmed the IJ's conclusion that Nelson did not establish that the Jamaican government would acquiesce to torture of Nelson. The BIA noted, however, that the IJ did not address Nelson's argument that the Jamaican government might acquiesce to future potential harm through willful blindness to gang violence more generally. But given the IJ's conclusion that the gang "would not torture him" was not "clearly erroneous," the BIA concluded it was unnecessary to address Nelson's alternative acquiescence argument. (App. at 9.) The BIA also affirmed the IJ's conclusion that Nelson's marijuana convictions

---

[4] Nelson petitioned for review of the BIA's denial of his application for withholding of removal and relief under the CAT, dated January 17, 2019, No. 19-1286, and the BIA's denial of Nelson's motion to reopen proceedings, dated October 2, 2019, No. 19-3455. We consolidated these appeals. All citations to briefs, appendices, and the Administrative Record ("A.R.") are from Appeal No. 19-1286 unless otherwise noted.

were particularly serious crimes making him ineligible for statutory withholding of removal.[5]

Given the BIA's focus on supporting facts, Nelson then moved to reopen the proceedings. He provided additional letters from Jamaican friends that, according to Nelson, "directly refute[d] the BIA's stated rationale for denying Mr. Nelson's claim." (19-3455 Opening Br. at 31.) The BIA denied Nelson's motion concluding that he could not carry his "heavy burden." (19-3455 App. at 4–6.)

Nelson timely filed petitions for review of both the denial of his claims on the merits and his motion to reopen.[6]

## II.     DISCUSSION

### A.     Standard of Review

We review questions of law and the application of law to facts *de novo*, *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017), and review Nelson's factual challenges to the BIA's denial of CAT protection for substantial evidence. *Grijalva Martinez v. Att'y Gen.*, 978 F.3d 860, 871 n.11 (3d Cir. 2020) (citing *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020)). In contrast, our review of Nelson's withholding of removal claim is limited

---

[5] The IJ thought one of Nelson's convictions was an aggravated felony and thus a per se particularly serious crime, but the BIA did not adopt or address that conclusion.

[6] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3) and we have jurisdiction under 8 U.S.C. § 1252(a) and (b). We may review questions of law, 8 U.S.C. § 1252(a)(2)(D), and factual challenges about the denial of CAT protection. *Grijalva Martinez v. Att'y Gen.*, 978 F.3d 860, 871 n.11 (3d Cir. 2020) (citing *Nasrallah v. Barr*, 140 S. Ct. 1683, 1694 (2020) (holding that the jurisdictional bar under 8 U.S.C. § 1252(a)(2)(C)–(D) does not apply to factual challenges to a CAT order)).

to constitutional claims or questions of law. 8 U.S.C. § 1252(a)(2)(C), (D). And Nelson's challenge to the BIA's finding that his convictions were "particularly serious crimes" is a question of law we review *de novo*, subject to the BIA's reasonable interpretation of the Immigration and Nationality Act. *Denis v. Att'y Gen.*, 633 F.3d 201, 205–06 (3d Cir. 2011).

Finally, we consider both the BIA and IJ decisions wherever the BIA "'affirmed and partially reiterated' the IJ's determinations." *Blanco v. Att'y Gen.*, 967 F.3d 304, 310 (3d Cir. 2020) (quoting *Sandie v. Att'y Gen.*, 562 F.3d 246, 250 (3d Cir. 2009)). If the BIA relies only on some of the grounds given for denying relief, we review only those grounds. *Myrie*, 855 F.3d at 515.

## B.    Nelson's CAT Claim

Nelson bears the burden of proving "that it is more likely than not that he . . . would be tortured if removed" to Jamaica.  8 C.F.R. § 1208.16(c)(2). Torture is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person" done "with the consent or acquiescence of, a public official . . . or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). A broadly phrased prohibition, torture includes "punishing [applicant] for an act [applicant] . . . committed or is suspected of having committed[.]" *Id.* A petitioner can establish "acquiescence" by a "public official" with evidence of willful blindness to the likely harm. *Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58, 70 (3d Cir. 2007). We consider both the torture and acquiescence prongs, finding error in the BIA's application of these standards.

6

### 1. Torture

We begin our analysis with the BIA's determination about torture, where credible testimony alone can satisfy the applicant's burden. 8 C.F.R. § 1208.16(c)(2). Nelson points out the IJ found his testimony "completely truthful and credible," (A.R. at 373), a finding the BIA left undisturbed. But the IJ and BIA, Nelson says, then concluded he failed to corroborate his testimony. That, Nelson argues, required notice and the opportunity to corroborate or to explain why corroboration is not reasonable.

Nelson grounds his argument in the statutory obligation that "[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii); *Saravia v. Att'y Gen.*, 905 F.3d 729, 735–36 (3d Cir. 2018). We have explained that before deciding a failure to corroborate undermines a CAT claim, IJs must: 1) identify the facts requiring corroboration, 2) ask whether the applicant has provided that information and, if not, 3) analyze whether the applicant has adequately explained his failure to do so. *Luziga v. Att'y Gen.*, 937 F.3d 244, 255 (3d Cir. 2019) (citing *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001)). Then, if the IJ concludes "a failure to corroborate undermines the applicant's claim" the applicant gets the "opportunity to supply [corroborating] evidence or explain why it is not available" before ruling. *Saravia*, 905 F.3d at 736–37.

That analysis did not occur here. The IJ found Nelson "fail[ed] to meet his burden" to prove the Bad Boys would "seek him out and torture him," (App. at 21), despite having found Nelson's testimony "completely truthful and credible." (A.R. at 373.) The BIA

7

agreed with the IJ that Nelson "has not demonstrated that the people who harmed him are still looking for him and would target him" in part because Nelson offered no evidence of the Bad Boys' perception of him "other than [his] testimony[.]" (App. at 7–8.) In other words, both the IJ and BIA found Nelson's failure to corroborate his testimony undermined his claim, without providing him notice that his failure would doom his application. That failure requires remand to determine whether other evidence changes the BIA's conclusions about Nelson's risk of torture.[7] *Luziga*, 937 F.3d at 257.

### 2.    Acquiescence

Remand is also necessary to determine whether Nelson has established that public officials in Jamaica would more likely than not acquiesce to his torture. To evaluate that risk, the IJ must ask "(1) how public officials will likely act in response to the harm the petitioner fears and (2) whether the likely response from public officials qualifies as acquiescence." *Guzman Orellana v. Att'y Gen.*, 956 F.3d 171, 181 (3d Cir. 2020). The first part is a factual inquiry, the second part, legal. *Id.*

Nelson raises two arguments on official response. First, that the Jamaican government generally turns a blind eye to gang violence. As the Government acknowledges, the BIA did not examine this question, relying instead on the lack of corroborating facts on torture. So following remand, if Nelson carries his burden on torture, the agency must resolve this acquiescence argument. Second, Nelson challenges the BIA's determination that the Jamaican government would not acquiesce to anti-gay violence.

---

[7] For example, the other letters Nelson collected from his Jamaican friends accompanying the motion to reopen focus on the Bad Boys' current views.

Nelson positions himself as a supporter of sexual rights, given his assistance to a family friend. So defined, he must show that Jamaican officials acquiesce to violence towards supporters similar to Nelson, not merely members of another protected class. But Nelson offers little support for his assertion that public officials would acquiesce to violence stemming from his friendships. Particularly because Nelson did not seek police assistance after the 2011 attack, there is little else in the record suggesting officials would ignore his plight in particular, even assuming they are unconcerned with other targets of violence.

On the other hand, Government officials may acquiesce to torture despite nominally opposing the torturers. *Pieschacon-Villegas v. Att'y Gen.*, 671 F.3d 303, 313–14 (3d Cir. 2011) abrogated on other grounds by *Nasrallah*, 140 S. Ct. at 1694; *see also Quinteros v. Att'y Gen.*, 945 F.3d 772, 788 (3d Cir. 2019). Here, the IJ acknowledged the Jamaican government's efforts to combat violence but found "the success of such efforts is not certain." (App. at 20–21.) The BIA likewise acknowledged the Jamaican government's efforts, but did not consider whether the government's alleged inability to protect its citizens might constitute acquiescence. So if on remand Nelson proves he is likely to be tortured, the BIA should consider the Jamaican government's efforts to protect its citizens and the results of those efforts.

## C.    Withholding of Removal

A person cannot ask for withholding of removal if previously "convicted . . . of a particularly serious crime[.]" 8 U.S.C. § 1231(b)(3)(B)(ii). An aggravated felony or felonies "for which the alien has been sentenced to an aggregate term of imprisonment of

at least 5 years" are "per se particularly serious." *Bastardo-Vale v. Att'y Gen.*, 934 F.3d 255, 265–66 (3d Cir. 2019) (en banc); 8 U.S.C. § 1231(b)(3)(B). But a crime does not have to be an aggravated felony to qualify as "particularly serious." *See id.*, *abrogating Alaka v. Att'y Gen.*, 456 F.3d 88 (3d Cir. 2006). Rather, Congress allowed the Attorney General to make that determination case-by-case. 8 U.S.C. § 1231(b)(3)(B) (the Attorney General may "determin[e] that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime"); *see Bastardo-Vale*, 934 F.3d at 265. The BIA has "broad discretion" to make this determination. *Sunuwar v. Att'y Gen.*, --- F.3d ---, No. 20-2091, 2021 WL 728417, at *7 (3d Cir. Feb. 25, 2021) (quoting *Nkomo v. Att'y Gen.*, 930 F.3d 129, 134 (3d Cir. 2019)).

To determine whether a crime is "particularly serious," the BIA first analyzes the elements of the conviction to determine whether it "potentially" falls "within the ambit" of a particularly serious crime; if so, the BIA may examine the facts of the offense. *Luziga*, 937 F.3d at 253 (citing *In re N-A-M-*, 24 I. & N. Dec. 336, 342 (B.I.A. 2007), *aff'd*, *N-A-M- v. Holder*, 587 F.3d 1052 (10th Cir. 2009) (per curiam)). Here, the BIA affirmed the IJ's determination that Nelson's 2008 marijuana convictions constituted particularly serious crimes[8] making Nelson ineligible for withholding of removal under 8 U.S.C. § 1231(b)(3)(B). We find no error in that conclusion.

---

[8] The BIA did not address the IJ's dispositive determination that one of Nelson's convictions was an aggravated felony, and therefore a per se particularly serious crime. So the only question before us is whether Nelson's convictions were particularly serious crimes under the framework in *Matter of N-A-M-*. *See Martinez v. Att'y Gen.*, 906 F.3d 281, 287 (3d Cir. 2018).

First, we disagree with Nelson that the BIA ignored the elements of his convictions under the first step of the *N-A-M-* framework.[9] The BIA acknowledged *N-A-M-* controlled, and agreed with the IJ that the "nature of [Nelson's] convictions" brought them into the ambit of particularly serious crimes. (App. at 6.) The IJ's conclusion reflected his analysis of the elements of both of Nelson's convictions before finding both were particularly serious crimes. We are satisfied the BIA, in affirming and partially reiterating the IJ's determination, satisfied its obligations under *N-A-M-*.

Nor do we find error in the BIA's determination. Nelson's convictions for attempted possession with intent to distribute five or more pounds of marijuana under N.J. Stat. Ann. § 2C:35-5(a)(1), 35-5b(10) and attempted distribution near a public facility under N.J. Stat. Ann. § 2C:5-1, § 35-7.1, both involved the distribution of controlled substances. We agree with the BIA that both convictions "potentially" fall into the "category of particularly serious crimes." *Luziga*, 937 F.3d at 253 (quoting *N-A-M-*, 24 I. & N. Dec. at 342); *see also Matter of Y-L-*, 23 I. & N. Dec. 270, 274 (B.I.A. 2002) (noting that "[b]oth the courts and the BIA have long recognized that drug trafficking felonies equate to 'particularly serious crimes'").

We also conclude that the BIA permissibly determined that the facts of the offenses were "serious." *Denis*, 633 F.3d at 205–06, 214. The BIA found that Nelson's lengthy prison sentence, the significant weight of the drugs (about 20 pounds), and evidence

---

[9] The Government argues Nelson waived this argument by failing to raise it in his opening brief. We need not address waiver because we find Nelson's arguments without merit.

pointing to broader distribution efforts, made his crimes particularly serious. The BIA also cited the IJ's finding that Nelson's delivery of the package to a place of public employment presented a substantial danger to the community. It was not an impermissible interpretation of 8 U.S.C. § 1231(b)(3)(B)(ii) to conclude these were "serious" facts.

We therefore agree that Nelson's convictions were particularly serious crimes and he is ineligible for withholding of removal. *Id*. We will deny Nelson's petition as to his claim for withholding of removal.

### III.   CONCLUSION

We will grant Nelson's petition for review of the BIA's denial of relief under the CAT and remand for further proceedings consistent with this opinion. We will deny Nelson's petition as to the BIA's denial of his claim for withholding of removal. Because the evidence Nelson submitted with his motion to reopen bears on the corroboration determination required on remand, Nelson's petition for review of the denial of his motion to reopen will be denied as moot.