**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**April 1, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

B.S.L.,

      Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

      Respondent.

------------------------------

BLACK LGBTQIA+ MIGRANT
PROJECT; U.C. HASTINGS CENTER
FOR GENDER AND REFUGEE
STUDIES; LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.,

      Amici Curiae.

No. 21-9519
(Petition for Review)

_____

**ORDER**

_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.

_____

This matter is before the court on petitioner's unopposed motion to seal this

case and to reissue the panel's February 11, 2022, Order and Judgment substituting

petitioner's name with a pseudonym or his initials.

Given petitioner's concerns for his safety upon removal, we grant the motion

to seal.  *See A.B. v. Sessions*, 741 F. App'x 563, 563 n.*, 567 (10th Cir. 2018)

(substituting petitioner's name with fictitious initials in a publicly filed decision and

granting motion to seal the rest of the case where petitioner was concerned for his safety after removal).  We direct the clerk to modify this panel's Order and Judgment to substitute petitioner's name with his initials to protect his identity.  The modified Order and Judgment shall be publicly filed nunc pro tunc to the original filing date, February 11, 2022.  The clerk is directed to keep all other documents relating to this case under seal.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**February 11, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

B.S.L.,

    Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

    Respondent.

------------------------------

BLACK LGBTQIA+ MIGRANT
PROJECT; U.C. HASTINGS CENTER
FOR GENDER AND REFUGEE
STUDIES; LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.,

    Amici Curiae.

No. 21-9519
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.

_____

---

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

B.S.L., a Jamaican national, petitions for review of a Board of Immigration Appeals (BIA) decision denying asylum, restriction on removal, and relief under the Convention Against Torture (CAT).  Exercising jurisdiction under 8 U.S.C. § 1252, we deny the petition for review.

I

B.S.L. entered the United States in 2003 and, except for a brief departure, has remained here since.  In 2009, the Department of Homeland Security (DHS) sought to remove him for overstaying his visa.  *See id.* § 1227(a)(1)(B).  He conceded the charge but for the next decade sought various forms of administrative relief, all of which were denied.  DHS eventually charged him again with overstaying his visa, and once more he admitted the charge, but this time he applied for asylum, restriction on removal, and relief under the CAT.[1]

At a hearing before an immigration judge (IJ), B.S.L. described the harm he experienced in Jamaica.  He told the IJ he had his "head burst open" working for the JLP political party when members of the opposing party threw rocks and sticks at him.  Admin. R., vol. 1 at 177.  He did not require treatment but he did need stitches after another incident in which he was stabbed in the buttocks, though the IJ noted he produced no medical reports to substantiate that injury.  B.S.L. also testified that a police officer from the opposing political party threatened to kill him and his two friends.  He indicated the same officer killed another friend, but he did not know

---

[1] DHS also charged B.S.L. as removable under 8 U.S.C. § 1227(a)(2)(B)(i) for having sustained a controlled-substance offense, but he denied that charge.

2

why. He added that this officer also arrested him at gunpoint once and detained him at the police station for almost two months because he was a suspect in a shooting.

Apart from political affiliations, B.S.L. testified that his boss's "enforcers" threatened him because they thought he and his friends stole a crop of marijuana. *Id.* at 183. Afterwards, B.S.L. came to the United States, and several years later, one of his friends was killed and another was shot, though B.S.L. did not know by whom.

B.S.L. further testified that his brother was killed while B.S.L. was in prison. His family told him that the mother of his brother's child was responsible for the murder and that she threatened him as well.

Additionally, B.S.L. indicated that the Jamaican police would treat him unfairly if he returned as a deportee. He said police abuse, beat, and arrest deportees and he personally saw a police officer stab a deportee with an ice pick.

Finally, B.S.L. told the IJ that when he was fifteen or sixteen years old he was sexually assaulted twice by a man from his stepfather's family. He did not want this information "to get out," but it did, and people started calling him "gay and faggot and batty boy," which he testified means, "faggot or gay." *Id.* at 190. B.S.L. explained that people in Jamaica "don't like gay people. They kill gay people." *Id.* at 191. He said rumors spread and he was "fighting all the time" with "bigger guys" who called him "batty boy." *Id.* He recalled that one time he was attacked with a whip and sustained swelling and bruising. He also stated that he was beaten several times a week for four to six months until he moved to a different town in Jamaica. He clarified, however, that his previous testimony in which he claimed his "head

3

burst," was not when he was working for the JLP, but when someone called him "batty boy" and "start[ed] flinging stones" at him." *Id.* at 194.  He said his mother washed and dressed the wound.  B.S.L. added that he began to identify as bisexual in 2016.  He said he met a man named Jose while working in Colorado and was involved with him "on and off for like three months." *Id.* at 196.  He did not know Jose's last name, though, and although Jose used a female name, B.S.L. could not remember it.

On cross-examination, B.S.L. acknowledged that except for his brief return to Jamaica in 2005, he had been living in the United States for the last seventeen years. He also acknowledged his extensive criminal record in the United States.  In particular, he discussed two Colorado convictions, one for unlawful distribution of a controlled substance offense, Colo. Rev. Stat. § 18-18-405(1), (2)(c)(I), and another for having sexual contact with a helpless victim, Colo. Rev. Stat. § 18-3-404(1)(c), both of which he pleaded guilty to in November 2016.  He explained that he was arrested for the drug offense after a friend called and asked if he knew anybody who could get cocaine.  B.S.L. knew someone close, so he twice sold his friend one gram of cocaine for $100 each time.  As for the sex offense, B.S.L. testified that a seventeen-year-old girl had been staying with him when a man brought acid (LSD) to his home and everyone was "tripping." Admin. R., vol. 1 at 200.  He went to bed with the girl, and although he admitted having sex with her while they were both "tripping" on acid, he denied knowing she was seventeen. *Id.*  B.S.L. was sentenced

4

to concurrent terms of two years in prison for the sex offense and five years in prison for the drug offense.

Based on this and other evidence, the IJ denied relief and ordered B.S.L. removed to Jamaica. The IJ concluded that B.S.L.'s drug and sex offenses were "particularly serious crimes" (PSC) that rendered him ineligible for asylum, restriction on removal, or withholding of removal under the CAT. The IJ recognized he could still qualify for deferral of removal under the CAT if he could show a likelihood of torture, but the IJ determined that he failed to meet that standard. Although the IJ expressed skepticism regarding some of B.S.L.'s testimony, the IJ stated, "[e]ven giving full weight to [B.S.L.'s] testimony and considering his fears in the aggregate, the Court finds he has not met his burden to establish it is more likely than not he would be tortured upon his return to Jamaica." *Id.* at 52. The IJ reasoned that he had not lived in Jamaica for some 17 years, he did not know anything about his former assailants, and evidence of generalized violence and discrimination was insufficient to show a likelihood that B.S.L. would be tortured.

The BIA adopted and affirmed the IJ's decision. The BIA agreed that B.S.L. was ineligible for asylum, restriction on removal, or withholding of removal under the CAT because his drug and sex offenses were PSCs. The BIA also agreed that he was ineligible for deferral of removal under the CAT. While B.S.L. claimed the IJ improperly discounted his testimony, the BIA ruled that, "[c]ontrary to [B.S.L.'s] arguments . . . , the [IJ] credited [his] testimony and carefully considered each aspect of his claim including his claim of past harm." *Id.* at 4. Accordingly, the BIA

5

dismissed the appeal, ruling that B.S.L.'s risk of torture was undercut by not having lived in Jamaica for approximately seventeen years.

## II

"This court reviews the BIA's legal determinations de novo and its factual findings under a substantial-evidence standard." *Igiebor v. Barr*, 981 F.3d 1123, 1131 (10th Cir. 2020) (brackets and internal quotation marks omitted). Because the BIA's decision is the final order of removal, "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). "However, when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id.* Our review is restricted to "'the administrative record on which the order of removal is based.'" *N-A-M v. Holder*, 587 F.3d 1052, 1056 n.3 (10th Cir. 2009) (quoting 8 U.S.C. § 1252(b)(4)(A)).

### A. Particularly Serious Crime

An alien convicted of a "particularly serious crime" is ineligible for asylum, restriction on removal, or withholding of removal under the CAT. *See* 8 U.S.C. § 1158(b)(2)(A)(ii) (asylum); *id.* § 1231(b)(3)(B)(ii) (restriction on removal); 8 C.F.R. § 1208.16(d)(2) (CAT relief). The BIA determined that B.S.L.'s drug and sex offenses were both PSCs. "We conduct de novo review of the [BIA's] legal interpretation of a particularly serious crime." *Birhanu v. Wilkinson*, 990 F.3d 1242, 1267 (10th Cir. 2021) (Bacharach, J., concurring in part, dissenting in part) (internal

6

quotation marks omitted).  "[T]he statute requires a conviction of only one [PSC] in order to render an alien ineligible for" relief.  *Brue v. Gonzales*, 464 F.3d 1227, 1235 (10th Cir. 2006).  Therefore, we address only B.S.L.'s drug offense.[2]

To determine what constitutes a PSC, the BIA considers "such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community."  *N-A-M*, 587 F.3d at 1056 (internal quotation marks omitted).  "Once an alien is found to have committed a particularly serious crime, [the BIA does not] engage in a separate determination to address whether an alien is a danger to the community."  *Id.* at 1057 (brackets and internal quotation marks omitted).

B.S.L. contends that in concluding that his drug offense was a PSC, neither the IJ nor the BIA considered the requisite factors or accounted for his limited role as a middleman.  He is incorrect.  As the BIA observed, B.S.L. was convicted of unlawful distribution of a controlled substance (cocaine).  *See* Colo. Rev. Stat. § 18-18-405(1), (2)(c).  The BIA set forth the requisite factors and agreed with the IJ that the offense was a PSC.  In turn, the IJ described the nature of the conviction by setting forth the elements of the offense.  *See In re N-A-M-*, 24 I. & N. Dec. 336, 342 (B.I.A. 2007)

---

[2] B.S.L. contends we must remand because the IJ and the BIA evaluated the wrong statute in concluding that his sex offense was a PSC.  We lack jurisdiction to consider this argument because B.S.L. failed to raise it before the BIA.  *See Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) (recognizing that judicial review is conditioned on administrative exhaustion).

(noting the nature of the conviction focuses on the elements of the offense). The IJ also recounted the facts and circumstances underlying the offense, recalling that B.S.L. admitted to twice providing one gram of cocaine to his friend, each time charging $100. And the IJ observed that B.S.L. received a "lengthy five-year sentence." Admin. R., vol. 1 at 50. This analysis, which the BIA adopted, demonstrates the agency considered the appropriate factors in concluding that the drug offense was a PSC. Although B.S.L. suggests the IJ failed to account for his role as a middleman, he has not shown, and the IJ did not find, that he had a peripheral role in the transaction. *Cf. In re Y-L-*, 23 I. & N. Dec. 270, 274, 276 (A.G. 2002) (concluding that "aggravated felonies involving unlawful trafficking in controlled substances presumptively constitute 'particularly serious crimes'" unless the alien shows "extraordinary and compelling" circumstances, including "merely peripheral involvement . . . in the criminal activity").

B.S.L. also contends the BIA failed to determine whether his drug offense was an aggravated felony. But as the BIA explained, his conviction did not need to be an aggravated felony to constitute a PSC. We considered this issue in *N-A-M* in evaluating an alien's eligibility for restriction on removal under § 1231(b)(3)(B)(ii). 587 F.3d at 1054-56. We explained that, while certain aggravated felonies may be designated a PSC, "the statute contains no limiting language restricting the Attorney General's discretion to label other crimes as 'particularly serious.'" *Id.* at 1056.[3]

---

[3] Under § 1231(b)(3)(B)(ii), an alien is ineligible for restriction on removal:

This analysis applies to claims under the CAT as well.  *See* 8 C.F.R. § 1208.16(d)(2).

And for asylum, other courts have determined that aggravated felonies are but a

subset of offenses that constitute PSCs.  *See, e.g.*, *Bastardo-Vale v. Att'y Gen. U.S.*,

934 F.3d 255, 264-65 (3d Cir. 2019) (en banc); *see also Villegas-Castro v. Garland*,

19 F.4th 1241, 1248 (10th Cir. 2021) (recognizing that if a crime does not constitute

an aggravated felony, an IJ would proceed to determine whether it would otherwise

qualify as a PSC).  Thus, there was no need to determine whether B.S.L.'s drug

offense was an aggravated felony.

### B.  Deferral of Removal under the CAT

Although B.S.L. was ineligible for asylum, restriction on removal, and

withholding of removal under the CAT, he could still qualify for deferral of removal

under the CAT if he could show it was "more likely than not" that he would be

tortured upon removal.  *See* 8 C.F.R. § 1208.17(a); *id.* § 1208.16(c)(4) (providing

that an alien subject to mandatory denial of withholding of removal under the CAT

---

if the Attorney General decides that—
        . . . .
        (ii)  the alien, having been convicted by a final judgment of a
particularly serious crime is a danger to the community of the United
States;
        . . . .
For purposes of clause (ii), an alien who has been convicted of an
aggravated felony (or felonies) for which the alien has been sentenced
to an aggregate term of imprisonment of at least 5 years shall be
considered to have committed a particularly serious crime.  The
previous sentence shall not preclude the Attorney General from
determining that, notwithstanding the length of sentence imposed, an
alien has been convicted of a particularly serious crime. . . .

will receive deferral of removal if he is otherwise entitled to CAT protection).
"Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . for any reason . . . by, or at the instigation of, or with the consent or acquiescence of, a public official . . . ." *Id.* § 1208.18(a)(1).

We review the denial of CAT relief for substantial evidence. *See Birhanu*, 990 F.3d at 1252. "Under the substantial evidence standard, the agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (brackets and internal quotation marks omitted). An applicant's testimony, "'if credible, may be sufficient to sustain the burden of proof without corroboration.'" *Igiebor*, 981 F.3d at 1128 (quoting 8 C.F.R. § 1208.16(c)(2)). An IJ must also consider "all evidence relevant to the possibility of future torture . . . including . . . [e]vidence of past torture . . .; [e]vidence that the applicant could relocate to a part of the country" where torture is unlikely; "[e]vidence of gross, flagrant or mass violations of human rights within the country of removal"; and "[o]ther relevant information regarding conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3).

The BIA determined there was no clear error in the IJ's conclusion that B.S.L. failed to demonstrate he faced a likelihood of torture. As the IJ explained, B.S.L. had not lived in Jamaica for approximately seventeen years and he knew virtually nothing about his former assailants, including whether they were still living in Jamaica, whether they were still alive, or whether they still would be motivated to harm him.

10

Indeed, we have previously recognized that evidence of past harm, particularly when it occurred in the remote past, may be insufficient to establish a likelihood of torture. *See Neri-Garcia v. Holder*, 696 F.3d 1003, 1010-11 (10th Cir. 2012) (noting petitioner failed to establish eligibility for CAT relief with evidence that he was harmed twenty-seven years earlier). The IJ also explained that B.S.L.'s fears based on his sexuality and status as a deportee failed to establish that he faced a likelihood of torture. The IJ acknowledged evidence of adverse country conditions reflecting discrimination and mistreatment of those who identify as lesbian, gay, bisexual, transgendered, or queer, including a law that was not enforced but which criminalizes consensual homosexual activity. Yet, as the IJ observed, claims based on speculation and general conditions of violence and discrimination are insufficient to show a likelihood of torture. *See Escobar-Hernandez v. Barr*, 940 F.3d 1358, 1362 (10th Cir. 2019) ("[B]y itself, pervasive violence in an applicant's country generally is insufficient to demonstrate the applicant is more likely than not to be tortured upon returning there."); *In re M-B-A-*, 23 I. & N. Dec. 474, 479-80 (B.I.A. 2002) (recognizing that a claim "based on a chain of assumptions and a fear of what might happen" fails to establish a likelihood of torture). Under these circumstances, we cannot say that any reasonable adjudicator would be compelled to reach a contrary conclusion.

Finally, B.S.L. contends that the BIA failed to consider his argument that he could not safely relocate within Jamaica. Although "[t]he BIA is not required to write an exegesis on every contention," it "is required [to] consider the issues raised,

11

and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Maatougui v. Holder*, 738 F.3d 1230, 1242-43 (10th Cir. 2013) (internal quotation marks omitted). The IJ did not expressly analyze B.S.L.'s argument, but she recognized that internal relocation was relevant to his eligibility for CAT relief. And citing a portion of B.S.L.'s brief where he raised this issue, the BIA ruled that the IJ "carefully considered each aspect of his claim." Admin. R., vol. 1 at 4. Given these remarks and the agency's thorough evaluation of this case, we are satisfied that it considered B.S.L.'s argument. *See Woldemeskel v. I.N.S.*, 257 F.3d 1185, 1190 (10th Cir. 2001) ("Given the BIA's detailed recitation of facts and its acknowledgement that much time has passed since [petitioner's] ordeal, we are satisfied that the BIA heard and considered all the evidence and arguments.").

### III

The petition for review is denied. B.S.L.'s motion to proceed without prepayment of costs and fees is granted.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

12